**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NINA P.,<br><br>Claimant,<br><br>v.<br><br>FRANK J. BISIGNANO,<br>Commissioner of Social Security,<br><br>Respondent. | No. 24 C 9772<br><br>Magistrate Judge Karyn L. Bass Ehler |

**MEMORANDUM OPINION AND ORDER**

Nina P.[1] ("Claimant") seeks judicial review of the final decision of the Commissioner of Social Security[2] ("Commissioner"), denying her application for disability insurance benefits and supplemental security income. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 8]. After reviewing the record and the parties' briefs, the Court grants Claimant's request for remand in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 16] ("Motion") and denies the Commissioner's Motion for Summary Judgment [ECF No. 21].

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by her first name and the first initial of her last name.

[2] Frank J. Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

## I. Procedural History

On August 31, 2021, Claimant filed an application for a period of disability and disability insurance benefits, as well as an application for supplemental security income. (R.15). Claimant alleged disability beginning January 28, 2021 for both applications. (R.15). The application was denied initially and on reconsideration after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.15). A telephone hearing was held on August 23, 2023, at which Claimant was represented by an attorney. (R.15). A vocational expert also testified. (R.15). The ALJ issued a decision on November 9, 2023, finding Claimant not disabled under the Social Security Act and denying benefits. (R.15-31). The Social Security Administration Appeals Council denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R.1-4). Claimant filed this lawsuit seeking judicial review of the Commissioner's decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II. The ALJ's Decision

Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must determine whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairments or combination of impairments meet or equal any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the

claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and the burden shifts to the Commissioner at step five. *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi*, 22 F.4th 644 (7th Cir. 2022). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

Applying the sequential test in this case, the ALJ found at step one that Claimant had not engaged in any substantial gainful activity since January 28, 2021, the alleged onset date. (R.18). At step two, the ALJ found Claimant had the following severe impairments: "osteoarthritis of the right knee, obesity, depressive disorder, and anxiety disorder with agoraphobia." (R.18). At step three, the ALJ found that Claimant did not have any impairment or combination of impairments that met or equaled any of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (R.19-23). With respect to Claimant's mental impairments, the ALJ undertook the paragraph B analysis[3] and determined that Claimant had mild limitations in understanding, remembering or applying information, and in adapting and managing herself, and that Claimant has moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace. (R.21-22). Before step four, the ALJ determined:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She is limited to occasional climbing,

[3] To determine whether a mental impairment meets or equals listing level severity at step three of the sequential analysis, a claimant must prove she meets the severity criteria of either paragraph B or C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. To satisfy the paragraph B criteria, a claimant must demonstrate an "[e]xtreme limitation of one, or marked limitation of two" of four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. *Id.* To evaluate these four areas, ALJs will investigate how an impairment interferes with a claimant's ability to function independently, appropriately, effectively, and on a sustained basis, as well as the quality and level of overall functional performance, any episodic limitations, the amount of supervision or assistance required, and the settings in which a claimant is able to function. 20 C.F.R. § 404. 1520a(c)(2).

> balancing, stooping, kneeling, crouching, and crawling. She is limited to simple, routine tasks involving simple work-related decisions and routine changes. She is limited to occasional interaction with coworkers and no interaction with the public.

(R.23). At step four, the ALJ found that Claimant had no past relevant work. (R.30). At step five, the ALJ found there were jobs in the national economy Claimant could perform based on the testimony of the vocational expert who opined that Claimant could perform the jobs of tagger, routing clerk, and cleaner. (R.31). Based on these findings, the ALJ concluded Claimant was not disabled. (R.31).

## DISCUSSION

### I. Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision, therefore, is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.'. . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning."

*Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). More specifically, the Seventh Circuit stated:

> All we required is that ALJs provide an explanation for how the evidence leads to their conclusions that is "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." . . . At times, we have put this in the shorthand terms of saying an ALJ needs to provide a "logical bridge from the evidence to his conclusion."

*Id.* at 1054 (citations omitted). When conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict.") (internal quotations and citation omitted). The court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding the ALJ's decision must be affirmed even if "reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

## II. Analysis

Claimant argues that the ALJ failed to explain the basis for rejecting certain of the state agency consultants' opinions as to her mental limitations, including a two-to-three step task limitation, and that the mental limitations the ALJ ultimately included in the RFC were not supported by substantial evidence. Motion [ECF No. 16] at 4-12; *see also* Plaintiff's Reply Brief [ECF No. 22] at 1-6. As the Court finds this issue is dispositive of the question of remand, the Court declines to address Claimant's other arguments.

**A. Standard for evaluating medical opinions.**

In deciding how persuasive a given medical opinion or finding is, the ALJ considers supportability, consistency, and other factors that tend to support or contradict the opinion or finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(b). Although a detailed analysis is not required, the ALJ must give a reviewing court a sufficient basis to connect the outcome to the record. *Id. See McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) ("when the evidence comes in the form of a medical opinion from a state agency physician, the agency's own regulations and rules require that the ALJ 'not ignore these opinions and must explain the weight given to the opinions in their decisions.'").

**B. The ALJ's consideration of the state psychologists' opinions.**

At Step Three, the ALJ rejected the opinion of treating nurse practitioner Zeng concluding that Claimant had marked limitations in CPP, because the ALJ found the nurse practitioner's opinion "unpersuasive as it is inconsistent with the record as a whole." (R.21-22).[4] The ALJ further explained:

> In a function report, the claimant did not report that her condition affects her concentration (Exhibit B5E/6). She reported that she can pay attention for as long as needed (Exhibit B5E/6). At a consultative examination, she had difficulty with calculations (Exhibit B6F/3). The medical record does not indicate the claimant demonstrated difficulty focusing during discussions of her medical condition or treatment. Multiple mental status exams were relatively unremarkable by the medical providers, without documentation of significant impairment of focus, the need for redirection, psychomotor agitation or retardation, or difficulty keeping up with the discussion. Also, she was able to engage in many activities including going to family gatherings, to stores such as Walgreen's, Target and Best Buy, to relatives' parties and birthday celebrations and other social gatherings and holiday celebrations (Mother's Day, July 4th), to a forest preserve to walk, to funeral service; that she played video games, spent time online with friends, and watched videos about illnesses to education herself; that she traveled with family; and she attended many exams and consults for physical complaints without signs of severe anxiety, panic or agoraphobia.

[4] Claimant does not challenge this part of the ALJ's opinion.

(R.22). Nevertheless, the ALJ also referenced the state psychologists' opinions finding Claimant had moderate limitations in CPP and found those opinions "persuasive as it is consistent with the record as a whole." (R.21). Based on the state psychologists' opinions, the ALJ concluded Claimant "has a moderate limitation" in CPP. (*Id.*)

At Step Four, the ALJ further discussed the state agency consultant opinions, stating:

> The State agency psychological consultants opined initially and on reconsideration that the claimant should be able to meet the basic mental demands of competitive, remunerative, 2-3 step tasks on a sustained basis with no contact with the public and limited contact with coworkers and can understand, carry out, and remember simple instructions and simple work (i.e., simple work related decisions) (Exhibits B2A, B3A, B6A, and B8A).

(R.27). Although the ALJ had found the state psychologists' opinions supported moderate limitations in CPP and were persuasive and consistent with the record at Step Three, the ALJ concluded at Step Four that those opinions were "of limited persuasive value." (R.28). As to the social limitations described in the psychologists' opinions, the ALJ stated the opinions did not "cite to objective findings/clinical signs to support a moderate limitation in social functioning. It appears to be based mainly on the claimant's complaints of agoraphobia and anxiety around others. The social limitations (i.e., low social contact and limited contact with coworkers) are vague and not stated in vocationally relevant terms." (R.28). The ALJ also explained she was not persuaded by the psychologists' opinions limiting Claimant to two-to-three step tasks because this limitation was "not supported by a citation to any objective findings or clinical signs outside the single consultative examination" and was "not stated in vocationally relevant terms" because "[t]he Dictionary of Occupational Titles and SSA Regulations do not define work skill levels in terms of the number of steps in instructions or in tasks to be performed." (R.28). The ALJ also questioned the meaning of the two-to-three step task limitation, stating "[i]t is unclear from [the consultants']

opinion if [the two-to-three step task limitation] is intended to be synonymous with the other statement that she has 'abilities to understand, carry out, and remember simple instructions; make judgments commensurate with the functions of simple work.'" (R.28). Based on the above discussion, the ALJ concluded the state psychologists' opinions "cannot be found fully persuasive as to mental limitations." (R.28). Nevertheless, the ALJ included certain mental limitations in the RFC, restricting Claimant to "simple, routine tasks involving simple work-related decisions and routine changes" as well as "occasional interaction with coworkers and supervisors and no interaction with the public." (R.23).

**C. The ALJ did not adequately explain whether RFC addressed state psychologists' opinions regarding Claimant's CPP limitations.**

The Commissioner says the ALJ properly weighed the state psychologists' opinions because, according to the Commissioner, the RFC "called for virtually the same" mental limitations endorsed by the psychologists' opinions. Response [ECF No. 21] at 4. The Commissioner argues "[w]hile the ALJ's RFC was remarkably similar to the findings of [the state consultants'] and differed in no material aspects, the ALJ found the opinions of limited persuasive value given that the psychologists did not case all limitations in vocationally relevant terminology or provide adequate citations backing their findings." *See id.* at 2. According to the Commissioner, "the ALJ's decision essentially did not break with these opinions, despite not fully crediting the opinions at large." *Id.* at 4. The Commissioner concludes "there were no meaningful inconsistencies between the ALJ's mental RFC and these opinions." *Id.* at 3. The Commissioner also relies on the state psychologists' opinions as providing substantial evidence supporting the RFC because the Commissioner says the mental limitations in the RFC "tracked directly" to the state psychologists' opinions. *Id.* at 7.

Turning, therefore, to the state psychologists' opinions, the Court notes the "checklist" findings in those opinions concluded Claimant had sustained concentration and persistence limitations including moderate limitations in "[t]he ability to maintain attention and concentration for extended periods" as well as "the ability to carry out detailed instructions"; social interaction limitations including moderate limitations in the "ability to interact appropriately with general public"; and adaptation limitations including moderate limitations in "[t]he ability to respond appropriately to changes in the work setting." (R.115-125; R.126-136; R.139-150; R.152-163). "Worksheet observations" like those prepared by the state psychologists here are "medical evidence which cannot just be ignored" in the RFC assessment. *Cain v. Bisignano*, 148 F.4th 490, 498–99 (7th Cir. 2025) (quoting *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015)).

Both psychologists also provided a narrative summary of Claimant's functional abilities:

> "This claimant alleges an anxiety d/o for which she receives treatment. She appears to be doing well in treatment process. Her primary concerns appear to be in unfamiliar social situations. Despite impairments, claimant retains the ability to complete most activities of adult independent living. Based on evidence currently available in the medical record regarding mental impairment, claimant should be able to meet the basic mental demands of competitive, remunerative, 2-3 step tasks on a sustained basis, in settings of low social contact (none with the public, limited with coworkers,) including the abilities to understand, carry out, and remember simple instructions; make judgments commensurate with the functions of simple work, i.e., simple work-related decisions; respond appropriately to supervision. She can deal with ordinary work changes and can negotiate to get to work settings."

(R.123; R.134; R.148; R.161). "While the ALJ is entitled to rely on the narrative explanation, the ALJ 'still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the ... MRFC forms.'" *Id.* (quoting *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019)); *see also Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (narrative translations must encapsulate or translate all checklist findings).

The psychologists' narrative explanation of the RFC included specific limitations targeting each of the functional areas in which they found Claimant had moderate limitations. To address the social interaction limitations, the state psychologists limited Claimant to work performed "in settings of low social contact (none with the public, limited with coworkers [])" while also stating Claimant could "respond appropriately to supervision." (R.123; R.134; R.148; R.161). Although the ALJ criticized this limitation as "vague and not stated in vocationally relevant terms," (R.28), the ALJ included a restriction to work with "occasional interaction with coworkers and supervisors and no interaction with the public" in the RFC. (R.23). To address Claimant's adaptation limitations, the state psychologists included a limitation "to make judgments commensurate with the functions of simple work, i.e., simple work-related decisions" and noted "[s]he can deal with ordinary work changes and can negotiate to get to work settings." (R.123; R.134; R.148; R.161). The RFC, in turn, included a limitation to "simple work-related decisions and routine changes." (R.23).

While the Court agrees with the Commissioner that, as to social interaction and adaptation, there do not appear to be meaningful differences between the mental limitations in the RFC and those included in the state psychologists' opinions, that still leaves unaddressed the psychologists' concentration and persistence limitations as to "[t]he ability to maintain attention and concentration for extended periods" as well as "the ability to carry out detailed instructions." (R.122; R.133; R.147; R.160). The state psychologists addressed these CPP limitations in the narrative RFC by explaining Claimant could meet the basic mental demands of work ("competitive, remunerative") with two-to-three step tasks on a sustained basis and had the ability to understand, carry out, and remember simple instructions. (R.123; R.134; R.148; R.161). Beyond the mental limitations in the RFC that (as explained above) address Claimant's social and

adaptation limitations, there is only one additional mental limitation included in the RFC – a restriction to "simple, routine tasks." (R.23). The Commissioner says the ALJ properly "opted to limit plaintiff to simple and routine tasks as opposed to two-to-three step tasks to couch the RFC limitations in tangible and better understood terminology." Response [ECF No. 21] at 6.

The Court disagrees with the Commissioner's explanation. "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00C(3). When an ALJ addresses a claimant's concentration, persistence, or pace ("CPP") limitations, the "RFC assessment need not recite the precise phrase 'concentration, persistence, or pace'" but "any alternative phrasing must clearly exclude those tasks that someone with the claimant's limitations could not perform." *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019); *see O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). As an initial matter, the ALJ did not explain why she opted to use the phrase "simple, routine tasks" or whether that was intended to encompass the psychologists' limitation to two-to-three step tasks. Nor did the ALJ conclude "there is almost no meaningful distinction between" the limitation to two-to-three step tasks in the psychologists' opinions and the RFC limitation to "simple, routine tasks . . ." Response [ECF No. 21] at 4. Rather, the ALJ stated "[i]t is unclear from this opinion if [the limitation as to the number of steps in tasks] is intended to be synonymous with the other statement that [Claimant] has 'abilities to understand, carry out, and remember simple instructions; make judgments commensurate with the functions of simple work," in addition to noting the two-to-three step task limitation was "not stated in vocationally relevant terms." (R.28).[5] The ALJ did

[5] Although the ALJ stated "[t]he Dictionary of Occupational Titles and SSA Regulations do not define work skill levels in terms of the number of steps in instructions or in tasks to be performed" (R.28), the Court is not persuaded that a two-to-three step task limitation is inherently not vocationally relevant. *See Molly G. v. Bisignano*, 2025 WL 2753598, at *5 (S.D. Ill. Sept. 29, 2025) ("The Commissioner acknowledges that 'a

not explain how she resolved her uncertainty as to the scope of the CPP limitations in the psychologists' opinion.

For these reasons, the Court does not agree that the ALJ's opinion makes clear that the limitation to "simple, routine tasks" in the RFC was intended to be synonymous with or a rephrasing of the psychologists' two-to-three step task limitation. What is clear is that the ALJ removed the two-to-three step task limitation entirely based, at least in part, on the possibility, although unresolved, that it may have been redundant of other limitations as to "abilities to understand, carry out, and remember simple instructions; make judgments commensurate with the functions of simple work." (R.28). *See Cieszynski v. Kijakazi*, 2023 WL 2523499 at *5 (7th Cir. Mar. 15, 2023) ("If the ALJ was concerned that [the agency consulting examiner] 'did not provide any specific limitations or explain the rationale for his conclusions,' he should have followed up with the doctor.") (citing *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)). Yet the ALJ also did not include any limitations in the RFC that expressly addressed Claimant's ability to understand, carry out, or remember simple instructions.[6]

The ALJ did state her view that the two-to-three step task limitation in the psychologists' opinions was "not supported by a citation to any objective findings or clinical signs outside the single consultative examination." (R.28). As Claimant notes, however, despite the ALJ's

---

limitation on the number of steps involved in a task can be considered vocationally relevant under applicable case law and agency policy.' [] As such, the Court finds the ALJ committed an error of law in concluding that the term step 'is too vocationally imprecise to use in this decision or find persuasive'. . . "); *see also Jennifer S. v. Bisignano*, 2026 WL 879702, at *3 (N.D. Ill. Mar. 30, 2026) (citing *Keeble v. Bisignano*, 2025 WL 3158001, at *3 (N.D. Ind. Nov. 10, 2025) for proposition that "[t]o disregard a term used by the Social Security Administration's own physicians to describe a claimant's ability to work as 'not vocationally relevant' requires, at bare minimum, more explanation than the ALJ provided here.")).

[6] As addressed above, the limitation to "simple work-related decisions and routine changes" that the ALJ did include in the RFC addressed the adaptation limitations identified by the state psychologists, rather than the CPP limitations. (*See* R.23 (describing the state psychologists' narrative RFC limitation "to make judgments commensurate with the functions of simple work" as "i.e., simple work-related decisions")).

acknowledgement about the findings of the consultative examination, the ALJ did not go on to explain why she apparently concluded those findings did not support the two-to-three step task limitation. Motion [ECF No. 16] at 5 (citing 20 C.F.R § 404.1520c(c)(1)); (*see also* R.25 (describing consultative examination findings included that Claimant "had some difficulty with short-term auditory memory" and "had difficulty with calculations"). For this reason, Claimant contends the ALJ did not properly weigh the supportability of the psychologists' opinion, at least as to the two-to-three step task limitation. *Id.* The Commissioner did not address whether the ALJ properly weighed the supportability factor in considering the CPP limitations in the psychologists' opinions. *See* Response [ECF No. 21] at 5 (addressing only consistency factor); Reply [ECF No. 22] at 23. Moreover, the ALJ's questions about the meaning of the two-to-three step task limitation included in the psychologists' opinions makes it unclear whether the ALJ dismissed this limitation entirely as unsupported or inconsistent with record evidence.

Ultimately, the Court is left guessing (1) whether the ALJ concluded that no CPP limitations were warranted notwithstanding the state psychologists' opinions finding moderate limitations in this functional area and the ALJ's finding at Step Three that Claimant had moderate CPP limitations; (2) as to the reasons for the ALJ's omission in the RFC of the two-to-three step task limitation as well as the understanding, carrying out, and remembering simple instructions limitation that were both included in the psychologists' narrative RFC; or (3) whether the RFC limitation to "simple, routine tasks" was intended to accommodate all of Claimant's CPP limitations. To the extent it was the latter scenario, courts have repeatedly held that an RFC limitation to "simple, routine tasks" is not typically adequate to address moderate limitations in CPP. *O'Connor-Spinner*, 627 F.3d at 620 (collecting cases) ("[i]n most cases [ ] employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from [a vocational

examiner's] consideration those positions that present significant problems of concentration, persistence and pace"). On the other hand, courts in this district have acknowledged that "[a]n RFC determination that a claimant can perform simple, routine work can accommodate a claimant's moderate limitation in CPP if [ ] the ALJ has reasonably relied on the opinion of a medical expert who translates CPP findings into an RFC determination . . ." *Maria R. v. Kijakazi*, 2022 WL 16553139, at *4 (N.D. Ill. Oct. 31, 2022) (citing *Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021) and *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019), among other decisions). But, as explained above, the ALJ here chose *not* to adopt the state psychologists' narrative RFC limitations related to CPP and did not otherwise explain how a limitation to "simple, routine tasks" accommodated the moderate CPP limitations identified in the opinions' checklists. *See Cain v. Bisignano*, 148 F.4th 490, 498–99 (7th Cir. 2025) (affirming RFC as supported by substantial evidence where "ALJ adequately explained the portions of the reports that were either persuasive or conflicted with other evidence in the record and appropriately considered both the narrative and checkbox sections of the reports"). Accordingly, here, the Court does not know whether or how the RFC limitation to "simple, routine tasks" addressed Claimant's CPP abilities nor can the Court conclude, as the Commissioner argues, that the "simple, routine tasks" limitation was supported by the psychologists' opinions.

The Commissioner questions "whether any discrepancy even existed" in the RFC based on the omission of the two-to-three step task limitation because "both State agency psychologists arguably clarified the meaning of '2-3 step tasks' by further opining that plaintiff could 'understand, carry out, and remember simple instructions.'" Response [ECF No. 21] at 5-7.

As an initial matter, as discussed above, the ALJ did not offer the Commissioner's suggested interpretation of the two-to-three step task limitation in the psychologists' opinions,

instead stating the meaning of this limitation was "unclear" and therefore the ALJ did not know if the psychologists "intended [the two-to-three step task limitation] to be synonymous with the other statement that she has 'abilities to understand, carry out, and remember simple instructions; make judgments commensurate with the functions of simple work." (R.28). As the ALJ did not conclude that the two-to-three step task limitation had the same meaning as the limitation to understanding, carrying out, and remembering simple instructions, the Court cannot rely on that explanation. *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

Moreover, even if the ALJ concluded that the two-to-three step task limitation was synonymous with a limitation to understanding, carrying out, and remembering simple instructions, the ALJ did not include any limitation in the RFC restricting Claimant to work with simple instructions, nor did the ALJ include any limitation related to the complexity of instructions in the hypothetical presented to the vocational expert. Indeed, when the vocational expert was asked during the hearing whether "the limitations the Judge laid out [] would preclude the ability to carry out detailed, written and oral instructions," the vocational expert replied "No, it would not." (R.61).

Finally, the Commissioner says the omission of the two-to-three step task limitation from the RFC was essentially harmless error because all of the jobs identified by the ALJ at Step Five had a Reasoning Development Level of 1 or 2 and such a reasoning level is compatible with a two-to-three step task limitation. Response [ECF No. 21] at 5-7. Even if the Commissioner is correct that an individual with a two-to-three step task limitation could perform jobs with a Reasoning Development Level of 1 or 2, this does not resolve the potential significance of the additional

omission of a limitation regarding the complexity of instructions in the hypothetical posed to the vocational expert. Based on the vocational expert's testimony referenced above, the expert did not appear to understand the limitation to "simple, routine tasks" to also limit the complexity of instructions.

Based on this record, the Court concludes that the ALJ's use of "simple, routine tasks" in the hypothetical to the vocational expert (and the RFC), apparently in lieu of both the CPP limitations included in the narrative RFC in the psychologists' opinions (*i.e.*, two-to-three step tasks and simple instructions), was not clearly harmless. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (ALJ's error is harmless only when "the court can predict with great confidence what the result of remand will be"). An ALJ's RFC and hypothetical to a vocational expert must incorporate all the claimant's limitations that the record supports, including any limitations in CPP. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). "When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004). On the record here, the Court is not convinced that the jobs identified by the vocational expert based on a hypothetical with only the "simple, routine tasks" limitation would necessarily be the same jobs that would have been identified with the addition of a two-to-three step task limitation as well as a limitation to understanding, carrying out, and remembering simple instructions.

For all the above reasons, the Court finds remand is warranted.

*****

As the Court finds a basis to remand for the reasons described above, the Court declines to consider Claimant's remaining arguments. The Court expresses no opinion on the decision to be made on remand and encourages the ALJ to do what is necessary to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See*, *e.g.*, *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994). On the present record, that explanation is lacking, and the Court cannot perform its appellate review function consistent with controlling law.

**CONCLUSION**

Accordingly, for all the reasons set forth above, Claimant's request for remand in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 16] is granted and Commissioner's Motion for Summary Judgment [ECF No. 21] is denied.

It is so ordered.

Karyn L. Bass Ehler
United States Magistrate Judge

Dated: September 10, 2026